# In the United States Court of Federal Claims

No. 21-1876C
(Filed:  April 7, 2022)

```
*************************************
KARL DAVID SCHNEITER,               *
                                    *
            Plaintiff,              *
                                    *
    v.                              *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
*************************************
```

Pro Se Plaintiff; RCFC 12(b)(1); RCFC 12(b)(6); Tort; Administrative Procedure Act, 5 U.S.C. § 706; Violation of Statutes and Regulations; Breach of Contract; Breach of Fiduciary Duty

Karl David Schneiter, Aiea, HI, pro se.

Sonia M. Orfield and Ann C. Motto, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**SWEENEY**, Senior Judge

Pro se plaintiff Karl David Schneiter alleges that his employer within the United States Department of Defense ("DoD"), the National Geospatial-Intelligence Agency ("NGA"), provided him with inaccurate tax advice and now owes him, under a variety of legal theories, monetary damages in the amount of $3402.  Plaintiff presents a thorough factual record in support of his claim.  Defendant moves to dismiss plaintiff's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which this court can grant relief.

The court is not unsympathetic to plaintiff's grievance, but, for the reasons explained below, his claims are either beyond the subject-matter jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims") or fail to state a claim upon which relief can be granted.  Accordingly, the court grants defendant's motion and dismisses the complaint.  The court also denies plaintiff's motion objecting to certain actions taken by agency counsel during the pendency of this litigation.

## I.  BACKGROUND

At the time he filed his complaint, plaintiff was an employee of the NGA.  During his NGA career prior to 2018, plaintiff moved four times to different duty stations through the

Permanent Change of Station ("PCS") process.[1]  For each of these moves, plaintiff relied on tax guidance provided by the NGA.  In 2017, however, the law regarding the taxation of PCS entitlements, where a federal agency reimburses the employee for certain costs related to moving to a new duty station, changed.  The statutory provisions affecting the taxation of PCS entitlements were included in the Tax Cuts and Jobs Act ("TCJA") of 2017, Pub. L. 115-97, 131 Stat. 2054, and took effect on January 1, 2018.

Plaintiff went through the PCS process again in 2018.  Unfortunately, the NGA, in the weeks leading up to and throughout plaintiff's change in duty station, provided its employees with outdated and inaccurate guidance as to the taxation of PCS entitlements, as if the TCJA had never been enacted and was not in force.  Thus, even though plaintiff relied, as he had in the past, on the most recent PCS guidance from the NGA, which purportedly addressed the taxation of PCS entitlements in 2018, he received misleading information that proved quite costly in terms of the taxes he owed for the PCS entitlements he received in 2018.  Plaintiff maintains that if he had timely received accurate tax guidance from the NGA regarding his PCS in 2018, he could have avoided $3402 in tax liabilities and associated expenses.  Plaintiff also alleges that he was harmed by the NGA's issuance of inaccurate tax forms concerning his PCS entitlements in 2018.  See Compl. 3 (stating that the inaccuracy of the NGA's "W2 and W2C forms" was "another financial cost center" affecting plaintiff); Pl.'s Resp. 9 (stating that plaintiff "filed his family taxes on time but had to file an amended return to account for the final W-2C form he received in August 2019"); Pl.'s Sur-reply 14 (stating that the delay in receiving accurate tax forms caused him "additional . . . expense").  For ease of reference, the court uses the term "tax information" to describe the combination of tax guidance and tax forms provided by the NGA to plaintiff.

Plaintiff sought monetary relief from the NGA through an administrative process that began with him filing a claim for damages in April 2019.  In August 2019, plaintiff resubmitted the claim, per instructions from the NGA, to the United States Department of the Army ("Army") for processing.  The Army viewed the claim as one brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, and noted, in particular, that it "may consider favorably only those claims resulting from incidents caused by the negligence of agents of the United States Government while acting within the scope of their employment."  Compl. App. 68.[2]

---

[1]  The facts recounted in this section—which are undisputed for the purpose of resolving defendant's motion to dismiss—derive from the complaint and the exhibits attached thereto, as well as matters of which the court may take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.  See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016).

[2]  The court uses the page numbers generated by the court's electronic filing system for the appendix of documents attached to the complaint.

Plaintiff's FTCA claim was denied by the Army in decisions dated September 17, 2019, June 29, 2020, and December 31, 2020.  The final commentary in this string of decisions provides the Army's rationale for the denial:

> Your agency has no duty to ensure that such [helpful] information is put out at all, particularly at any certain time, or for ensuring that every employee has a copy and understands it fully.  Each federal taxpayer, not their employer, has a duty to research any and all deductions that might apply to them including deductions that might be applicable to a PCS move.  Then the taxpayer prepares their own tax returns or hires professionals to do so.  Your agency is not responsible for preparing your tax return or for ensuring that you receive the largest possible tax refund.  Your own research or that of a paid tax professional prior to your move and later during the tax filing process is the only way to ensure that you made the most advantageous decisions and had all deductions to which you were entitled.  As you have provided no evidence of negligence, I have no choice but to deny your request for reconsideration [of the denial of your claim].

Id. at 84-85.  On December 31, 2020, the Army informed plaintiff that he could continue to press his negligence claim by filing suit "in an appropriate District Court no later than six months from the mailing date of this letter," but did not "imply[] that any such suit, if filed, would be successful."  Id. at 85.

Plaintiff next filed an FTCA claim asserting negligence on the part of the NGA in the United States District Court for the District of Hawaii ("district court").  See Schneiter v. NGA, No. 21-291 (D. Haw. filed June 30, 2021).  On September 27, 2021, the district court dismissed plaintiff's suit pursuant to a joint stipulation of the parties.  See Schneiter v. NGA, No. 21-291 (D. Haw. Sept. 27, 2021) (stipulation and order for dismissal without prejudice).  Plaintiff's rationale for stipulating to the dismissal of his suit in the district court was that he determined that "a contract case was more appropriate vice a negligence case against NGA."  Pl.'s Resp. 9.

On September 20, 2021, plaintiff filed suit in this court seeking monetary relief under "the Little Tucker Act, 28 U.S.C. § 1346," but also relying on this court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491.  Compl. 1.  Plaintiff's description of his claim before this court includes terms that imply a contractual relationship between the NGA and plaintiff:  "liquidated damages," "under contract," "Transportation Agreement," and "bound by contract."  Id.  Plaintiff also alludes to the equitable remedy of restitution in his prayer for relief.  In addition, plaintiff alleges that the NGA was well aware of the tax changes affecting PCS entitlements in 2018 but "withheld information that the Defendant 'had at the ready.'"  Id. at 4.

More generally, plaintiff references a number of missteps in the NGA's provision of tax information to its employees in the wake of the TCJA's changes to the tax code.  See, e.g., id. at 3 (alleging that the National Security Agency, a "sister" agency of the NGA, provided its employees with "thoughtful" guidance on the taxation of PCS entitlements, but the NGA "provided no such support"); id. (stating that the NGA acknowledged its "poor process management" after it issued inaccurate or delayed tax forms related to PCS entitlements in

2018); id. (characterizing the NGA's provision of inaccurate tax information as a "failure to perform its policies and procedures (as it had always done in the past for this Plaintiff)"); see also Pl.'s Sur-reply 1 (accusing the NGA of "mismanagement of a regulation"); id. at 7 (asserting that the NGA failed "to produce correct W2 travel and W2c forms until after the tax filing deadline for April 2019" and stating that the agency "grossly mis-managed the taxing mechanisms associated with the PCS process"). In its motion to dismiss, defendant addresses the possibility that plaintiff's claim sounds in tort because plaintiff appears to allege that the NGA was negligent when it provided inaccurate tax information to its employees.

In his response to defendant's motion to dismiss, plaintiff avers that his is not a tort claim; instead, he relies on three other legal doctrines.[3] First, plaintiff asserts that both express and implied-in-fact contracts were breached by the NGA. Second, plaintiff contends that the NGA breached its fiduciary duty as plaintiff's employer. Third, plaintiff argues that the NGA failed to act appropriately in response to the passage of the TCJA, and that his claim in this court may proceed under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706.[4]

Once the briefing of defendant's motion to dismiss was underway, plaintiff filed a motion requesting that the court inquire into certain conduct of agency counsel. See Pl.'s Mot. 4 ("Plaintiff requests the court address his concerns with Defendant agency counsel (NGA), and if

---

[3] Plaintiff substantially altered the claim or claims set forth in the complaint when he responded to defendant's motion to dismiss. The court did not direct plaintiff to file an amended complaint to formally bring those claims before the court because the new claims raised for the first time in plaintiff's response or sur-reply could not provide the predicate for recovery against defendant. It is not helpful to the litigants, the court, or the judicial process to require a party to perform a meaningless act.

The court will address all aspects of plaintiff's amended claims as if they were properly before the court in an amended complaint because plaintiff is proceeding pro se and there has been no prejudice to defendant, as well as for reasons of judicial efficiency. See Kelley v. Sec'y, U.S. Dep't of Lab., 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[L]eniency with respect to mere formalities should be extended to a pro se party."); Thundathil v. United States, No. 19-1008C, 2021 WL 945100, at *4 (Fed. Cl. Mar. 12, 2021) (dismissing claim, under RCFC 12(b)(1) and RCFC 12(b)(6), that was only asserted by the pro se plaintiff in her response to a motion to dismiss); Michels v. United States, 72 Fed. Cl. 426, 432 (2006) (considering claim raised by a pro se plaintiff in her response to a motion to dismiss to "avoid unnecessary multiplication of proceedings"). The court's review of the additional claims is also intended to reassure plaintiff that the court understands his grievance against the NGA and to explain why the relief he seeks cannot be granted.

[4] Although plaintiff references various provisions of the APA, see Pl.'s Resp. 12-13 (citing 5 U.S.C. § 551(10)(C), (E), (13)), he seeks judicial review of the NGA's actions or inactions in 2018 pursuant to 5 U.S.C. § 706, see Pl.'s Sur-reply 13 (arguing that this court may review the NGA's failure to act under 5 U.S.C. § 706(2)(A), (D)).

warranted, address ABA rule 8.4:  Misconduct.").  Briefly stated, plaintiff received a communication from the NGA's Counter Insider Threats unit after he filed suit in this court, and the topic of the communication was "the content of . . . documents produced for the court by the Plaintiff in this court and in previous venues."  Id. at 2.  Plaintiff asserts that agency counsel contacted internal investigators at the NGA and asks the court to consider whether this conduct was improper.  Defendant responded to the motion with its explanation of the conduct and attached declarations from two NGA attorneys.  Plaintiff then filed a reply reflecting his continued objections to agency counsel's conduct.

Plaintiff also filed a sur-reply to the motion to dismiss in which he expands on his earlier arguments and raises additional ones.[5]  He devotes the bulk of his brief to an extensive discussion of the statutory and regulatory context of PCS entitlements, and states that these authorities support his view that his claim is for breach of contract.  Although his arguments in this regard are not crystal clear, plaintiff states that the PCS process is a "Financial, Contract, and Personnel Action Mechanism."  Pl.'s Sur-reply 7.  Plaintiff's reliance, in his sur-reply, on a number of statutes, regulations, and DoD instructions suggests a claim for the violation of statutory or regulatory mandates.  See id. at 12 ("What Makes Failure to Follow the United States Code Illegal?  Is a Failure to Act on Changes to the Law or Update United States Code Derived Federal Processes Illegal?").  And, finally, although plaintiff does not specifically link his discussion of the statutory and regulatory context of PCS entitlements to his claim that the NGA breached its fiduciary duty, the court also considers whether plaintiff's arguments in his sur-reply address this claim as well.

The briefing of defendant's motion to dismiss and plaintiff's motion is complete.  Neither party requested oral argument, and the court deems it unnecessary.  Both motions are now ripe for adjudication.

## II.  LEGAL STANDARDS

### A.  Pro Se Plaintiffs

Pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, this leniency does not relieve a pro se plaintiff from jurisdictional requirements.  See Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").  In other words, a pro se plaintiff is not excused from his burden of proving, by a preponderance of evidence, that the court possesses jurisdiction.  Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

---

[5]  Plaintiff's sur-reply was filed by leave of the court; defendant was permitted to respond to plaintiff's additional contentions.

## B.  RCFC 12(b)(1)

With respect to a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the plaintiff bears the burden of establishing, by a preponderance of evidence, that the court possesses subject-matter jurisdiction.  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  In determining whether subject-matter jurisdiction exists, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  Id.  However, the court is not limited to the pleadings in considering subject-matter jurisdiction.  Banks, 741 F.3d at 1277; Pucciariello v. United States, 116 Fed. Cl. 390, 400 (2014).  If the court finds that it lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

## C.  Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868).  Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case."  Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015).  To determine whether it has jurisdiction, the court discerns the true nature of the claims in the complaint and is not constrained by the plaintiff's characterization of those claims.  Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994).

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941).  The waiver of immunity "may not be inferred, but must be 'unequivocally expressed.'"  United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States.  28 U.S.C. § 1491(a)(1); White Mountain Apache, 537 U.S. at 472.  However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages."  United States v. Testan, 424 U.S. 392, 398 (1976).  Instead, the substantive right must appear in another source of law, such as an express or implied-in-fact contract, or a money-mandating constitutional provision, statute, or regulation.  Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

## D.  RCFC 12(b)(6)

A claim that survives a jurisdictional challenge remains subject to dismissal under RCFC 12(b)(6) if it does not provide a basis for the court to grant relief. See Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy."). To survive an RCFC 12(b)(6) motion to dismiss, a plaintiff must include in his complaint "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). In other words, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). Although the court must "accept as true all of the factual allegations contained in the complaint," Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56), legal conclusions in the complaint are not presumed to be true, Iqbal, 556 U.S. at 678. Finally, "a court 'must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" Rocky Mountain Helium, 841 F.3d at 1325 (alteration in original) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

## III.  ANALYSIS

### A.  Tort Claim

The court notes first that plaintiff, in the complaint's chronology of events, appears to allege a claim sounding in tort, notwithstanding his disavowal of any reliance on a tort theory of liability. See, e.g., Evergreen Marine, Ltd v. United States, 153 Fed. Cl. 297, 300 (2021) (holding that the plaintiff's "assertion in its complaint that the [government's] action amounted to a breach of an implied contract cannot change the gravamen of the complaint," which sounded in tort (citing Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1574 (Fed. Cir. 1997))). Specifically, the facts alleged by plaintiff describe negligence on the part of the NGA when it provided inaccurate tax information to its employees, including plaintiff, concerning PCS entitlements in 2018. See, e.g., Moden v. United States, 404 F.3d 1335, 1345 (Fed. Cir. 2005) (noting that the government's liability, under a tort theory, depends on its "level of care"); Thune v. United States, 41 Fed. Cl. 49, 52 (1998) ("A claim for damages resulting from the government's faulty, negligent or improper implementation of an authorized project sounds in tort."); Lance Indus., Inc. v. United States, 3 Cl. Ct. 762, 780 & n.6 (1983) (noting that the elements of negligence are breach of due care, proximate cause, and actual injury). Because such a claim of negligence sounds in tort, this court is powerless to adjudicate it. See 28 U.S.C. § 1491(a)(1) (excluding claims sounding in tort from this court's jurisdiction under the Tucker Act); Souders v. S.C. Pub. Serv. Auth., 497 F.3d 1303, 1307 & n.5 (Fed. Cir. 2007) (holding that negligence and other "tort claims are clearly outside the limited jurisdiction of the Court of Federal Claims"). Therefore, to the extent that plaintiff asserts a tort claim, that claim must be dismissed for lack of subject-matter jurisdiction.

### B.  Administrative Procedure Act Claim

Next, in his response brief, plaintiff suggests that his claim relies, at least in part, on the APA. He argues that the APA permits this court to sanction the NGA for its failure to provide plaintiff with accurate tax information. Defendant responds that the APA does not provide a money-mandating source of law that would support plaintiff's claim for money damages under the Tucker Act. Defendant is correct; this court has no jurisdiction over claims brought under the APA. See, e.g., Evans v. United States, 748 F. App'x 979, 985 (Fed. Cir. 2018) ("The APA does not extend the jurisdiction of the Court of Federal Claims and is not a money-mandating source of law."); Stone v. United States, 152 Fed. Cl. 649, 655 (2021) ("Since the APA does not provide for money damages, APA claims fall outside of this Court's jurisdiction." (citing Albino v. United States, 104 Fed. Cl. 801, 815 (2012))); see also Wopsock v. Natchees, 454 F.3d 1327, 1333 (Fed. Cir. 2006) (noting that the APA is not a money-mandating source of law for Little Tucker Act jurisdiction). To the extent that plaintiff asserts a claim under the APA, that claim is dismissed for lack of subject-matter jurisdiction.

## C. Violation of Statutes and Regulations Claim

Plaintiff also argues, in his sur-reply, that the NGA violated statutes and regulations that govern the PCS process. Two principal themes emerge from the narrative in his brief. First, he argues that the NGA was obliged by statute, regulation, and DoD instructions to produce accurate guidance documents regarding the PCS process but failed to do so. Second, he argues that the NGA was obliged to produce accurate tax forms, so as to correctly report taxable PCS entitlements to both the Internal Revenue Service and to NGA employees, but failed to do so.

For jurisdiction to lie in this court for his claim, plaintiff must show that the statutes or regulations allegedly violated by the NGA are money-mandating. See, e.g., Wopsock, 454 F.3d at 1331 ("[T]he question whether a statute can fairly be interpreted as money-mandating is one that directly bears on the issue of jurisdiction."); Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (Ct. Cl. 1967) (stating that the jurisdictional test under the Tucker Act is whether "the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained"). In other words, the statutes and regulations identified by plaintiff must hold the United States monetarily liable for inaccuracies in the tax information provided by the NGA. See, e.g., Testan, 424 U.S. at 399 (holding that a statute classifying federal positions into pay grades contained "no provision . . . that expressly makes the United States liable for pay lost through allegedly improper [job] classifications"). Plaintiff has not satisfied this jurisdictional requirement.

In his sur-reply, plaintiff excerpts statutes, regulations, and DoD instructions that address, in some detail, PCS entitlements and, more generally, the administration of travel allowances for DoD employees.[6] These references to the administrative obligation placed upon DoD component agencies, however, do not address, with any specificity, the accuracy of the tax information provided to employees. See, e.g., Pl.'s Sur-reply 9 (stating that the NGA Director

---

[6] In his sur-reply, plaintiff refers to, and quotes from, source documents available on the Internet. For purposes of this opinion, the court assumes that the source material is accurately quoted and that the appropriate context for the quoted material is provided in plaintiff's brief.

must obtain approval from DoD "when publishing written material that implements" travel regulations), 11-12 (stating that certain "Heads of . . . DoD Components . . . will[] "Publish Component regulations and guidance" regarding "employment and staffing policies for their . . . personnel"). Further, none of the provisions referenced by plaintiff, either in his sur-reply or in the appendix attached to his complaint, requires that a DoD agency compensate its employees for excess taxes that were incurred due to the receipt of inaccurate tax information. In other words, plaintiff has not pointed to a statutory or regulatory provision that directly addresses inaccurate tax information or, more crucially, that compels a monetary payment to a DoD agency's employees as a result of the agency's administrative errors.

The sources of law relied upon by a plaintiff in this court must compel the agency to pay money in the circumstances alleged in the complaint:

> For purposes of this case, the key point is that the compensation the statute can "fairly be interpreted" as mandating must be the kind of compensation the plaintiff seeks. This court has no jurisdiction over a claim for one type of money damages if the "money-mandating" statute the plaintiff cites pertains only to a different type of money damages. "The crucial question is whether, and to what extent, Congress has consented to a monetary claim in this court."

Clean Fuel LLC v. United States, 110 Fed. Cl. 415, 418 (2013) (quoting Mitchell v. United States, 664 F.2d 265, 270 (Ct. Cl. 1981) (en banc), aff'd, 463 U.S. 206 (1983)); see also Perri v. United States, 340 F.3d 1337, 1342 (Fed. Cir. 2003) (stating that the "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum" (quoting Eastport, 372 F.2d at 1007)); Casa de Cambio Comdiv S.A., de C.V. v. United States, 291 F.3d 1356, 1361 (Fed. Cir. 2002) (stating that the regulation relied upon by the plaintiffs could be money-mandating for certain types of claims but not for the class of claims in that case). Thus, if plaintiff references a statute or regulation that is money-mandating as to the payment of a certain travel entitlement, for example, the same statute or regulation, if it is silent as to payments to compensate employees for expenses incurred due to inaccurate tax information, is not money-mandating for plaintiff's claim. Cf. Roberts v. United States, 745 F.3d 1158, 1166-67 (Fed. Cir. 2014) (holding that statutes and regulations governing a Living Quarters Allowance ("LQA") were money-mandating as to the payment of an LQA where authorized, but also holding that a claim questioning the Marine Corps' practice of restricting the use of LQAs was an APA claim beyond this court's jurisdiction). Because plaintiff's claim that the NGA violated statutes and regulations is founded on statutes and regulations that do not mandate the payment of money damages for the harms plaintiff alleges, it is not within this court's jurisdiction and must be dismissed.

### D. Claim for Breach of Contract

Plaintiff also asserts that the NGA had a contractual obligation to provide him with accurate tax information, and that the NGA breached this contract.[7]  Defendant argues that even if plaintiff has pointed to an actual contract binding the NGA, he has not established that "an obligation or duty arising out of the contract" has been breached.  Def.'s Reply 4.  Relevant to this dispute is precedent concerning the formation and breach of contracts with the federal government, and the role of contract doctrines in federal employment.  After describing that precedent, the court turns to plaintiff's allegations regarding the formation of an implied-in-fact contract, an express contract, and a contract arising out of the statutes and regulations that govern the PCS process.

### 1.  Contract Formation and Breach

Generally, a contract with the federal government must meet the following requirements: "mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government."  Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1326 (Fed. Cir. 1997).  Of particular importance in this case is the concept of mutuality of intent to contract.  "As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent."  Turping v. United States, 913 F.3d 1060, 1065 (Fed. Cir. 2019) (quoting Anderson v. United States, 344 F.3d 1343, 1353 (Fed. Cir. 2003)).  "To satisfy its burden to prove such a mutuality of intent, a plaintiff must show, by objective evidence, the existence of an offer and a reciprocal acceptance."  Id. (quoting Anderson, 344 F.3d at 1353).  The requisite mutuality of intent, in the case of an implied-in-fact contract, is referred to as a meeting of the minds.  See id. ("An implied-in-fact contract is one founded upon a meeting of minds and is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." (quoting Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003)).  For an express contract to be formed, there must be a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."  Chattler v. United States, 632 F.3d 1324, 1330 (Fed. Cir. 2011) (quoting Cutler-Hammer, Inc. v. United States, 441 F.2d 1179, 1183 (Ct. Cl. 1971)); see also Columbus Reg'l Hosp. v. United States, 990 F.3d 1330, 1339 (Fed. Cir. 2021) (holding that offer and acceptance were established where the documents authored by the federal government showed its "willingness to enter into a bargain and justified [the state's] understanding that its assent would consummate the bargain").  Plaintiff bears the burden to show that an implied-in-fact contract or an express

---

[7]  Although plaintiff references "restitution" and the "NGA's violation of Plaintiff's implied-in-fact and formal contract status," Compl. 4; Pl.'s Resp. 12, the complaint makes clear that his contract claim is a request for money damages owed to him as a result of the NGA's breach of contract.  To the extent that plaintiff relies on the principle of restitution to establish the amount of these alleged damages, the court agrees with plaintiff that the equitable remedy of restitution is available from this court when it serves to establish the correct amount of money damages for a successful contract claim.  See Pauley Petroleum Inc. v. United States, 591 F.2d 1308, 1316 (Ct. Cl. 1979) (noting that the Tucker Act has always permitted the use of "equity doctrines to arrive at a pecuniary judgment").

contract was formed and, although the evidence will differ, each type of contract requires evidence of mutuality of intent to contract.  See Turping, 913 F.3d at 1065.

As for the elements of a claim for breach of contract, "a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach."  San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989).  It is the first and second elements that are at issue in this case, in other words, whether the NGA entered into a contract with plaintiff, and whether any such contract included a duty on the part of the NGA to provide plaintiff with accurate tax information.

## 2.  Federal Employment Generally Not Contractual in Nature

Also relevant to plaintiff's breach-of-contract claim is the role of contract doctrines in the federal employment arena.  As a general rule, a federal agency's duties to its employees are established by statute or regulation, not by contract:

> "[P]ublic employment does not[] . . . give rise to a contractual relationship in the conventional sense."  Therefore, plaintiff may not base his theory of recovery on contract law since he was a federal employee.  Federal officials who by act or word generate expectations in the persons they employ, and then disappoint them, do not ipso facto create a contract liability running from the Federal Government to the employee, as they might if the employer were not the government.  [Plaintiff's] claim, so far as founded on contract, is shown by the instant record to be moral, not legal.

Shaw v. United States, 640 F.2d 1254, 1260 (Ct. Cl. 1981) (third alteration in original) (citations omitted) (quoting Urbina v. United States, 428 F.2d 1280, 1284 (Ct. Cl. 1970)).  In other words, a federal employee's rights against his employer generally arise from statutes and regulations, not from a contractual relationship.  See, e.g., Schism v. United States, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002) (en banc) ("Federal employees, both military and civilian, serve by appointment, not contract, and their rights to compensation are a matter of 'legal status' even where recruitment agreements are made."); Chu v. United States, 773 F.2d 1226, 1229 (Fed. Cir. 1985) (stating that "federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government").  In the context of federal employment, contract claims that rely upon an extension of duties or rights established by statute or regulation are generally not plausible.[8]  See Scharaga v. United States, 209 Ct. Cl. 728, 732 (1976) (rejecting a contract claim because the document relied upon could not "be construed as granting [the federal employee] any rights not otherwise given to him by the statutes or regulations").

---

[8]  The concept of "plausibility," as used in this opinion, addresses the legal sufficiency of plaintiff's claim for breach of contract, not his truthfulness or factual accuracy.  See Twombly, 550 U.S. at 558 (noting that a claim is not plausible "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief").

### 3. Alleged Implied-in-Fact Contract

Plaintiff's principal set of allegations regarding the formation of an implied-in-fact contract is not found in the complaint but in plaintiff's response to defendant's motion to dismiss.[9]  The time frame for the alleged contract formation is 2018, when plaintiff "successfully applied for, was selected for and accepted an analyst position [in] Hawai'i . . . and successfully completed the . . . permanent change of station."  Pl.'s Resp. 1.  There are two principal paragraphs in plaintiff's brief that address the alleged formation of an implied-in-fact contract.

First, plaintiff argues that the PCS process "begins with" an implied-in-fact contract between the NGA and the employee who contemplates and accepts a change in duty station:

> [PCS] processing in the federal government begins with an <u>implied-in-fact contract</u>, as an employee has applied, been vetted by appropriately designated/authorized government employees, been selected for the position by the same designated/authorized government employees, and . . . accepts the position.  In the interim period between selection and formal contracting of the employee to the PCS move . . . is one of initial planning for the employee and both the gaining organization . . . and departing organization . . . , resulting eventually in an end and start date for the employee . . . .  The employee, once [DoD Form 1618] is signed, awaits travel orders and NGA documentation on the PCS process . . . .  Once travel orders . . . and the NGA "Non-Foreign [Outside the Continental United States] Relocation Guide" are passed to the employee, it is up to the employee to execute the move successfully utilizing United States military, private contractors, and the NGA mechanisms available.  NGA and sister [DoD] combat support agencies provide[] many billeted positions, over-arching directorate leadership, and Office of General Counsel/Security and Installations oversight to accomplish the PCS process.

<u>Id.</u> at 4-5.  Plaintiff then elaborates on his theory that an implied-in-fact contract was formed during his PCS process in 2018:

> The . . . offering of a government position at NGA (or another federal agency) that has [PCS] entitlements engages an implied-in-fact contract the moment an employee engages in that hiring process.  Because that process has mutuality of intent (need an employee for X, employee is interested in X position and indicates so . . . ); there exists a lack of ambiguity in offer and acceptance (if employee is vetted, selected by panel, they are offered and may accept X); and, representatives of the United States whose conduct is relied upon must have actual authority to bind the government in contract (NGA Office leadership, NGA Career Services, NGA [Human Development] and NGA [Financial Management]

---

[9]  <u>See</u> <u>supra</u> note 3.

> all have that authority individually or when working in concert for position X).
> The moment the employee sign[s a] transportation agreement . . . and receives
> his/her travel orders . . . a formal contract for time and service is added to the
> existing implied-in-fact contract to perform the work of position X once the
> employee executes the move portion of the formal contract. . . .  The conduct
> required of the Government/NGA is that it meet statutory and contractual
> expectations, that is meet the conditions of the position description the employee
> []in good faith relied upon[], and that it meets the conditions and standards of care
> it previously afforded the same employee base previously.  Prior to and after
> [fiscal year] 2018 (Federal fiscal years 2017 and 2019), NGA correctly provided
> the taxability of PCS entitlements.  The harm done by NGA to this Plaintiff
> occurred initially in the period when the employee was considering positions in
> Hawai'i (April and May 2018), and then carried on through the early PCS
> decision making process (Late June through July 2018).

Id. at 13-14.  These contentions do not plausibly describe the formation of an implied-in-fact contract that specifically includes a term requiring the NGA to provide plaintiff with accurate tax information.

As an initial matter, there is no evidence of a "contractual duty," San Carlos Irr. & Drainage Dist., 877 F.2d at 959, agreed to by the NGA, whereby the agency would provide plaintiff with accurate tax information regarding his PCS entitlements.  The appendix attached to the complaint lacks any communication from the NGA to plaintiff that promises to provide accurate tax information.  Although the NGA did provide plaintiff with tax guidance in at least one publication, Compl. App. 40-42, there is no indication that the NGA had a contractual duty to provide accurate tax information in exchange for an employee's agreement to change a duty station through the PCS process.  Consequently, there was no meeting of the minds regarding any such contractual duty between the NGA and plaintiff.

Plaintiff also appears to argue that the NGA's provision of accurate tax information concerning PCS entitlements in years past created a contractual duty for the agency to provide accurate tax information in 2018.  This argument fails because, as noted above, the NGA's duties to plaintiff are established, as a general rule, by statute and regulation, not by contract. Furthermore, the customary employment practices of a federal agency do not create contractual duties.  See, e.g., Adams v. United States, 391 F.3d 1212, 1221 (Fed. Cir. 2004) (stating that "courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel" (quoting Kizas v. Webster, 707 F.2d 524, 535 (D.C. Cir. 1983))); Eby v. United States, 142 Fed. Cl. 293, 300 (2019) (noting that "however reasonable the expectation [of a federal employee], such an expectation cannot bind the government" in contract).  In short, no contractual duty to provide accurate tax information arose from the NGA's prior conduct in plaintiff's previous changes of duty station.  Plaintiff's claim for breach of contract, to the extent that it relies on a breach of an implied-in-fact contract, therefore must be dismissed pursuant to RCFC 12(b)(6).

**4. Alleged Express Contract**

Turning to plaintiff's argument that an express contract was breached by the NGA, the appendix attached to the complaint includes two documents generated during the PCS process: a "Transportation Agreement" signed by plaintiff and a PCS "Request/Authorization" form signed by an NGA official.  Compl. App. 14-16.  It is the former document that plaintiff refers to as his contract with the NGA.  When both documents are read together, the agreement reflects plaintiff's understanding regarding certain conditions placed on the PCS entitlements he would receive upon moving to Hawaii, and the authorization indicates the extent of the PCS entitlements that the NGA would provide to plaintiff for this move.  There is no representation in either document that the NGA would provide tax information to plaintiff, or a promise that the representations in any such tax information would be accurate.  In other words, the alleged contractual obligation that provides the basis for plaintiff's claim for breach of contract is absent from the purported contract.  To interpret these two PCS documents as an express contract promising that the NGA would provide accurate tax information to plaintiff is not plausible.

In Scharaga, the United States Court of Claims considered whether a travel agreement, signed by a federal employee moving back to the United States after an overseas assignment, conferred contract rights that were greater than those provided by statute or regulation.  209 Ct. Cl. at 732.  Through this agreement, the agency paid moving expenses for the employee that were not authorized by statute or regulation.  Id. at 730-31.  When the agency began to recoup the overpayment, the employee claimed that his travel agreement "contractually bound defendant to pay the travel expenses."  Id. at 732.  The court rejected his theory of liability:

> [T]he travel agreement upon which plaintiff relies as a binding contractual agreement creates no vested rights.  The agreement is made to prevent the instance where the Government pays an employee's travel expenses only to lose the value of the employee's future performance.  The agreement cannot be construed as granting plaintiff any rights not otherwise given to him by the statutes or regulations.

Id.  Although there are significant differences between this case and Scharaga, here, too, the agreement that plaintiff signed with the NGA did not contain a term that gave him contractual rights beyond those in the statutes and regulations governing the PCS process.  Plaintiff's claim for breach of contract, to the extent that it relies on a breach of an express contract, is not supported by any factual allegations that plausibly bind the NGA in contract to provide accurate tax information; any such claim must be dismissed for failure to state a claim upon which relief can be granted.

### 5.  Alleged Contract Arising From Statutes and Regulations

Finally, the court addresses the breach-of-contract argument presented in plaintiff's sur-reply.[10]  The basic premise of this argument, it appears, is that the NGA's duty to comply

---

[10]  See supra note 3.

with statutes and regulations addressing the topic of PCS entitlements also bound the NGA in contract to plaintiff, an NGA employee. This premise runs counter to precedent. The general rule is that federal statutes impose duties on federal agencies by their terms and implementing regulations, not by establishing a contractual relationship between the agency and the intended beneficiary of the statutory mandate. See, e.g., Moda Health Plan, Inc. v. United States, 892 F.3d 1311, 1329 (Fed. Cir. 2018) ("Absent clear indication to the contrary, legislation and regulation cannot establish the government's intent to bind itself in a contract." (citing Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985))), rev'd on other grounds sub nom. Me. Cmty. Health Options v. United States, 140 S. Ct. 1308 (2020); Ind. Mun. Power Agency v. United States, 154 Fed. Cl. 752, 767 (2021) (noting "the presumption that statutes do not create contractual rights"); ARRA Energy Co. I v. United States, 97 Fed. Cl. 12, 27 (2011) ("There is a general presumption that statutes are not intended to create any vested contractual rights.").

Thus, even if the NGA violated certain statutes and regulations that address PCS entitlements, plaintiff cannot bring a claim for breach of contract on that ground, unless he can point to a specific statutory or regulatory provision that created a contract between plaintiff and the NGA. Notwithstanding plaintiff's extensive discussion of statutes and regulations that are implicated in the PCS process, he has not identified any provision that binds the NGA in contract with its employees. Therefore, plaintiff's claim for breach of contract, to the extent that it relies on a breach of a contract established through statutes and regulations, is not plausible and must be dismissed because he has not overcome the presumption that these laws and regulations do not establish a contract between plaintiff and the NGA.

### E. Claim for Breach of Fiduciary Duty

The final claim asserted by plaintiff is one for breach of fiduciary duty, first articulated in his response to defendant's motion to dismiss.[11] This claim is minimally explained. For example, plaintiff states that the NGA appears to "deny any form of fiduciary relationship between the government (NGA) and its contracted employee." Pl.'s Resp. 7. He summarily concludes that the NGA's administration of his PCS in 2018 was a "violation of . . . fiduciary responsibilities." Id. at 12. In addition, perhaps in relation to this claim, he suggests in his sur-reply that the NGA abused its discretion when it "unlawfully fail[ed] to update critical information (four times)" in the PCS guidance materials it provided to plaintiff. Pl.'s Sur-reply 13. The court cannot consider the claim for breach of fiduciary duty that plaintiff presents to the court.

As defendant notes, tort claims are excluded from this court's jurisdiction and a breach-of-fiduciary-duty claim is generally considered to be a tort claim. E.g., Carter v. United States, 142 Fed. Cl. 159, 163 (2019); McNeil v. United States, 78 Fed. Cl. 211, 236 (2007), aff'd, 293 F. App'x 758 (Fed. Cir. 2008). However, such a claim may proceed in this court if the fiduciary duty is imposed on the government by a money-mandating statute or regulation or,

---

[11] See supra note 3.

alternatively, by a contract.  See Hopi Tribe v. United States, 782 F.3d 662, 667 (Fed. Cir. 2015) ("To establish that the United States has accepted a particular fiduciary duty, [a plaintiff] must identify statutes or regulations that both impose a specific obligation on the United States and 'bear[] the hallmarks of a conventional fiduciary relationship.'" (second alteration in original) (quoting United States v. Navajo Nation, 556 U.S. 287, 301 (2009))); Cleveland Chair Co. v. United States, 557 F.2d 244, 246 (Ct. Cl. 1977) ("[P]laintiffs' claim for damages arising out of defendant's breach of a fiduciary duty must be grounded in a contractually based obligation to plaintiffs to succeed here.").  Neither of these circumstances is present here.

First, as noted in Section III.C, supra, plaintiff has not identified a money-mandating statute or regulation that imposes a duty on the NGA to provide accurate tax information concerning the PCS process.  Nor can the court construe any of the statutes and regulations referenced in plaintiff's sur-reply as imposing a fiduciary duty on the NGA to provide its employees with accurate tax information.  The source of law relied upon must impose a specific duty, Hopi Tribe, 782 F.3d at 667, which, to support plaintiff's breach-of-fiduciary-duty claim, would be a specific duty to provide accurate tax information.  That specific duty is nowhere to be found in the statutes, regulations, and DoD instructions upon which plaintiff relies, nor do these travel allowance rules describe a scheme that bears the hallmarks of a conventional fiduciary relationship.  See, e.g., Szuggar v. United States, 145 Fed. Cl. 331, 337 (2019) (holding that the statutes and regulations relied upon by temporary nurses were not sufficient to establish a trust relationship between the United States and the nurses); Cox v. United States, 105 Fed. Cl. 213, 218 (2012) (stating that for statutes and regulations to establish a fiduciary duty there generally must be a trustee, a beneficiary, and a trust corpus (citing Mitchell, 463 U.S. at 225)).  Plaintiff's breach-of-fiduciary-duty claim lacks a statutory or regulatory foundation that comports with this precedent and therefore cannot succeed on that basis.

Second, as noted in Section III.D, supra, plaintiff has not identified a contract with the United States, express or implied-in-fact, that imposes a duty on the NGA to provide accurate tax information concerning the PCS process.  Nor can the court construe any contract alluded to by plaintiff as imposing a fiduciary duty on the NGA to provide its employees with accurate tax information.  The documents that plaintiff proffers as evidence of an express contract, for example, merely address the PCS entitlements that the NGA would provide to plaintiff in 2018, not tax information.  Furthermore, the documents signed by plaintiff and the NGA official regarding plaintiff's PCS in 2018 do not bear the hallmarks of a conventional fiduciary relationship.

Similarly, there was no meeting of the minds whereby the NGA promised to provide accurate tax information to plaintiff, so as to support the formation of an implied-in-fact contract.  Nor can plaintiff's allegations be read to plausibly imply that the NGA agreed to act in a fiduciary role for its employees, and also agreed to accept the specific fiduciary duty of providing accurate tax information.  Accordingly, it cannot be reasonably inferred that the NGA owes a fiduciary duty to its employees of the nature alleged here.  Accord Cleveland Chair Co., 557 F.2d at 248 (refusing to imply a fiduciary duty that was conspicuously absent from any written contract between the plaintiffs and the United States).  Indeed, such an inference would violate the general rule that federal employment is governed by statute and regulation, not by

contractual relationships.  Shaw, 640 F.2d at 1260.  In short, plaintiff's breach-of-fiduciary-duty claim is not supported by a contract imposing on the NGA the specific fiduciary duty of providing accurate tax information.  Therefore, it must be dismissed for lack of subject-matter jurisdiction.[12]

### F.  Plaintiff's Motion

Having determined that plaintiff's claims must be dismissed for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted, the court turns to plaintiff's motion.  Plaintiff states that the purpose of his motion is to draw the court's attention to his "concerns with Defendant agency counsel (NGA)."  Pl.'s Mot. 4.  Plaintiff requests that the court determine whether agency counsel's actions constitute misconduct as defined by "rule 8.4" of the American Bar Association ("ABA").  Id.  Defendant, in its response to plaintiff's motion, explains agency counsel's conduct.  In his reply, plaintiff states that he "continues to object" to agency counsel's actions.  Pl.'s Reply 1.  Although plaintiff does not propose a particular response from the court to the alleged misconduct, he implies that the court might, if appropriate, censure or sanction agency counsel.

As explained by defendant, the documents that plaintiff attached to his complaint include some information, such as NGA employee names, that the NGA typically does not release to the public.  The attorney for the NGA who was assigned to assist the United States Department of Justice in this case shared plaintiff's complaint and its attachments with a colleague who had "familiarity and prior work with the TCJA."  Def.'s Resp. 7.[13]  This colleague was troubled by the presence of employee names in the documents attached to the complaint, and also questioned whether government computers had been used, inappropriately in her view, to print some of the documents.

---

[12]  Breach-of-fiduciary-duty claims, whether founded on statutes, regulations, or contract, or on a combination of the foregoing, are most often dismissed for lack of subject-matter jurisdiction if the identified basis for imposing the duty does not actually impose a fiduciary duty.  See, e.g., Fairholme Funds, Inc. v. United States, 26 F.4th 1274, 1297-99 (Fed. Cir. 2022) (affirming this court's dismissal of breach-of-fiduciary-duty claims, founded on both statutory and contractual provisions, for lack of subject-matter jurisdiction); Spengler v. United States, 688 F. App'x 917, 918, 925 (Fed. Cir. 2017) (affirming dismissal of a breach-of-fiduciary-duty claim for lack of subject-matter jurisdiction); Hopi Tribe, 782 F.3d at 671 (same); Szuggar, 145 Fed. Cl. at 337-38 (dismissing a breach-of-fiduciary-duty claim for lack of subject-matter jurisdiction).  Dismissal might also be appropriate under RCFC 12(b)(6), however.  See Cleveland Chair Co., 557 F.2d at 249 (dismissing breach-of-fiduciary-duty claims on the merits because the agreement relied upon by the plaintiffs did not give rise to the specific fiduciary duty required to support recovery on their claims).

[13]  The court uses the page numbers generated by the court's electronic filing system for defendant's response to plaintiff's motion.

Agency counsel then reported plaintiff to two NGA offices:  the "Privacy and Civil Liberties division in Mission Oversight and Compliance," and the "Counter Insider Threat unit within the Agency's Security and Installations Directorate."  Id. at 8, 10.  On January 13, 2022, plaintiff received a telephone call from the Counter Insider Threat unit questioning him "about printing documents on government printers and concerns about privacy matters of those named in certain emails."  Pl.'s Mot. 2.  Plaintiff states that this was the first time in his eighteen-year career with the NGA that he felt threatened by the agency's "security policy."  Id. at 1.

The Counter Insider Threat unit did not find "any intentional wrongdoing" on the part of plaintiff and closed the inquiry.  Def.'s Resp. 10.  Plaintiff's security clearance "remains intact." Id.  Plaintiff nonetheless objects to agency counsel's use of the "'heaviest hammer,'" the Counter Insider Threat unit, for a number of reasons.  Pl.'s Reply 1.  First, because the documents that provoked agency counsel had been publicly released in prior proceedings, plaintiff questions why agency counsel waited until this litigation to express her authorization and privacy concerns. Second, plaintiff faults agency counsel for using the Counter Insider Threat unit to conduct an inquiry into his computer use when other, less intrusive means, such as an inquiry through his supervisory chain of command, were available.  Third, plaintiff argues that agency counsel's motivation to impede his success in this litigation can be found not in her stated concerns with the complaint's attached documents, but in her long association with the defense of the NGA's problematic response to the TCJA's changes to the taxation of PCS entitlements.

Defendant responds that agency counsel's "concern was not with retaliation, but with protecting sensitive information that had now been filed in public."  Def.'s Resp. 2.  Defendant also contends that it is unnecessary for the court to inquire further "into the alleged threat or harassment" of plaintiff because there was no violation of the applicable rule of conduct.  Id. at 3.  For his part, plaintiff urges the court to "carefully review" the declaration filed by agency counsel that explains her behavior, to keep in mind that she "has been a constant buttress" to the NGA's defense of its mismanagement of the taxation of PCS entitlements in 2018, and to take into account that "to this day" she has an interest in defending the version of events espoused by the agency.  Pl.'s Reply 4.

Defendant correctly identifies the misconduct rule at issue in plaintiff's motion as ABA Model Rule of Professional Conduct 8.4 ("ABA Rule 8.4"):

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law.  This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16.  This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

Def.'s Resp. 3.  Defendant argues that ABA Rule 8.4 does not apply to the harassment alleged by plaintiff because agency counsel is not alleged to have harassed plaintiff due to his membership in any of the protected classes listed in subsection (g) of the rule.

The court cannot agree with defendant that ABA Rule 8.4 has no applicability to harassing behavior of a more general nature because ABA Rule 8.4(d) applies to conduct that is prejudicial to the administration of justice.  For example, a state version of ABA Rule 8.4(d) was applied to sanction intimidation tactics that an attorney used against opposing counsel, a judicial officer, and disciplinary authorities.  See In re Small, 294 P.3d 1165, 1190-91 (Kan. 2013) (suspending an attorney from the practice of law for six months due to his egregious misconduct, which included extreme examples of intimidating behavior).  An attorney's threat to sue his opposing counsel violated another state version of ABA Rule 8.4(d), earning a reprimand and monetary sanctions, because the conduct could have disrupted the court's administration of his case.  See Gardendance, Inc. v. Woodstock Copperworks, Ltd, No. 1:04CV10, 2006 WL 8447272, at *10 (M.D.N.C. Jan. 19, 2006), report and recommendation adopted, No. 1:04CV10, 2007 WL 9753909 (M.D.N.C. Sept. 14, 2007).  Finally, a state version of ABA Rule 8.4(d), and other ethics rules, were applied to permanently disbar two attorneys who conspired to improperly obtain a Driving Under the Influence arrest of their opposing counsel during a trial recess.  The Fla. Bar v. Adams, 198 So. 3d 593, 599, 622 (Fla. 2016).  These decisions show that harassment and intimidation tactics that frustrate the administration of justice violate ABA Rule 8.4(d).

Here, however, agency counsel's conduct was appropriate in light of her role and duties at the NGA, and falls far short of the intimidating behavior sanctionable under ABA Rule 8.4(d).  As she explains in her declaration, she serves "as the lead counsel for the Agency's Counter Insider Threat program as well as to the Agency's Freedom of Information Act (FOIA) program."  Def.'s Resp. 7.  Previously, she advised the NGA's "Privacy and Civil Liberties division and the Public Release team on legal questions related to the Privacy Act of 1974 and appropriate procedures and legal requirements on public release of Agency information."  Id. Finally, she notes that the Counter Insider Threat program functions to "deter, detect and

-19-

mitigate the unauthorized disclosure of sensitive information." Id. (quoting Committee on National Security Systems Directive No. 504). The court cannot characterize as harassment or intimidation agency counsel's referral of her legitimate concerns to the appropriate watchdog authorities within the NGA.

Although plaintiff argues that agency counsel had improper motives for the referrals, her actions are accorded a presumption of regularity. See, e.g., A Squared Joint Venture v. United States, 133 Fed. Cl. 291, 297, 299 (2017) (noting that a plaintiff who contends that agency officials acted in bad faith must overcome a presumption of regularity in agency conduct (citing Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085 (Fed. Cir. 2001))). Agency counsel explains, under penalty of perjury, that she made the referrals to the Privacy and Civil Liberties and Counter Insider Threat units in good faith:

> My motivation for doing so was to inform these offices that their equities were involved and to allow them to take whatever action they deemed appropriate. I did not inform [the NGA attorney who shared the complaint attachments with her] of the referral. Privacy and Civil Liberties determined that there had been a breach under the Privacy Act, but that it did not meet the threshold for reporting. It is my understanding that after speaking with the plaintiff, Counter Insider Threat decided not to pursue further action. These decisions are within their discretion; my goal was to ensure that they had the opportunity to make these decisions. Additionally, I needed to ensure my clients were aware of possible mishandling of Agency information. Agency employees receive annual training on Insider Threat and the Privacy Act, and are obligated to inform these offices of possible violations. I acted in good faith at all times in this matter and had no intention to retaliate against the plaintiff for filing a complaint.

Def.'s Resp. 8. After careful review of agency counsel's declaration, as requested by plaintiff, and careful consideration of agency counsel's role in defending the NGA against plaintiff's claims in the past, the court cannot conclude that she violated ABA Rule 8.4(d).

Even assuming, hypothetically, that agency counsel was motivated, in whole or in part, by an improper desire to thwart plaintiff's success in this action, nothing she did had an impact on the court's resolution of the legal issues before it. In other words, her referrals of privacy and authorization concerns to watchdog units within the NGA had no prejudicial effect on the administration of justice in this case. See Matter of Member of Bar Hurley, 183 A.3d 703 (Del. 2018) (table) (commenting that a showing that an attorney's "conduct affected the performance of opposing counsel or had some distinct impact on the judicial process" might support a violation of that state's version of ABA Rule 8.4(d)). Here, the legal precedents applicable to the types of claims and factual allegations presented by plaintiff are uniformly and indisputably arrayed in favor of the government's position that the complaint must be dismissed. Because any intimidation of plaintiff by agency counsel would not have altered the outcome of this case, the administration of justice would not have been prejudiced, as is required for the court to find a violation of ABA Rule 8.4(d).

Nor do agency counsel's actions merit sanctions under other precedent.  Sanctions may be imposed if a court finds that an attorney acted in bad faith and attempted to "perpetrate a fraud on the court."  Chambers v. NASCO, Inc., 501 U.S. 32, 51 (1991).  The court may sanction an attorney for violating an order protecting information that is sealed from public view.  Zeidman Techs., Inc. v. United States, 141 Fed. Cl. 726, 728 (2019).  The court may also sanction an attorney for destroying evidence.  United Med. Supply Co. v. United States, 77 Fed. Cl. 257, 276 (2007).  Where government counsel is accused of attempting to intimidate opposing counsel or the plaintiff, however, this court has not imposed sanctions where the actions taken were reasonable under the circumstances.  Takota Corp. v. United States, No. 06-553C, 2009 WL 5201774, at *4 (Fed. Cl. Dec. 14, 2009).  Because agency counsel's actions here were reasonable under the circumstances, no sanctions are appropriate.  Plaintiff's motion must therefore be denied.

## IV.  CONCLUSION

The court has considered all of the parties' arguments.  To the extent not discussed herein, they are unpersuasive or unnecessary for resolving the issues currently before the court. The court finds the allegations of fact presented by plaintiff to be credible, and it is unfortunate that plaintiff found himself at the mercy of the NGA's bureaucratic foot-dragging.  Nonetheless, there is no legal remedy in this court for plaintiff's claims.

Accordingly, the court **GRANTS** defendant's motion to dismiss.  It **DISMISSES** plaintiff's claim for breach of contract for failure to state a claim upon which relief can be granted, **with prejudice**, and plaintiff's remaining claims for lack of subject-matter jurisdiction, **without prejudice**.  The court also **DENIES** plaintiff's motion challenging agency counsel's conduct during this litigation.  The clerk is directed to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Senior Judge